PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, O'Brien and Senior Judge Clements
Argued at Alexandria, Virginia

DREW TIDWELL

v.        Record No. 1388-16-4

JENNIFER LATE

OPINION BY
JUDGE JEAN HARRISON CLEMENTS
MAY 30, 2017

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Bruce D. White, Judge

Drew Tidwell, *pro se*.

(Jennifer Late, *pro se*, on brief).  Appellee submitting on brief.

Drew Tidwell (father) is appealing a child support order.  Father includes six assignments of error in his opening brief.  First, he contends the circuit court erred by averaging his gross annual income for the past four years in order to calculate his income for child support purposes.  Second, he asserts that if this Court finds that a trial court has the discretion to average income, then the circuit court erred by (a) using four years of income to determine his average gross income; (b) "using the amounts of gross income for various years that were never entered into as evidence;" (c) not averaging the allowable deductions for self-employed people over the same time period; and (d) not averaging Jennifer Late's (mother) gross income.  Third, father argues that the circuit court erred by accepting the amount of child care costs "premised upon a document not admitted into evidence" and denying him the opportunity to "effectively cross-examine" mother about child care costs.  Fourth, he argues that the circuit court erred by refusing "to consider a cause of action in the Petition regarding the number of days . . . [mother] illegally deprived custody of the children to [father] . . . ."  Fifth, father contends the circuit court

erred by not applying the revised child support payments retroactively. Sixth, he contends the circuit court erred by refusing to read or consider his pre-trial brief, which deprived him of due process. For the reasons stated below, we affirm the circuit court's decision in part, reverse in part, and remand this case to the circuit court for further proceedings consistent with this opinion.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Niblett v. Niblett, 65 Va. App. 616, 622, 779 S.E.2d 839, 842 (2015) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)).

Father and mother were divorced on April 24, 2013. The final decree of divorce incorporates the parties' custody agreement, dated July 12, 2012, and their memorandum of understanding, dated July 12, 2012. In accordance with those documents, the parties have joint legal and physical custody of their two minor children. The final decree of divorce includes the following timeline regarding child support:

> i. Pursuant to the *Pendente Lite* Order issued on May 18, 2012, beginning May 1, 2012, Plaintiff [father] shall pay to Defendant [mother], as child support, the sum of One Thousand and Thirty-Six and 00/100 Dollars ($1,036.00), to be paid by the First day of each month.
>
> ii. Commencing August 1, 2012 and continuing through December 31, 2012, the parties are agreed that Plaintiff [father] shall pay to Defendant [mother], as child support, according to the shared custody calculation, the sum of Six Hundred and Sixty-Seven Dollars and 00/100 ($667.00).
>
> iii. Commencing January 1, 2013 and continuing through March 31, 2013, the parties are agreed that Plaintiff [father] shall pay to Defendant [mother], as child support, according to the shared custody calculation, the sum of One Thousand and Ninety-Six Dollars and 00/100 ($1,096.00).

iv. Commencing April 1, 2013 and continuing every month thereafter until further order of the Court Plaintiff [father] shall pay to Defendant [mother], as child support, according to the shared custody calculation, the sum of One Thousand Dollars and 00/100 ($1,000.00) per month, to be paid by the First day of each month. This constitutes a modification to the parties' Agreements (Exhibits A and B) such that the child support is no longer self-executing as set forth therein.

v. The parties shall share equally (50/50) the costs of a child's participation in agreed-upon extracurricular activities. On the 1st day of each month the parties will provide an accounting to the other party of the children's agreed-upon extracurricular activities, including receipts and proof of payment, for immediate reimbursement for one-half (1/2) of the costs incurred during the preceding month. In no event shall reimbursement be later than the 15th day of the same month. A party shall make their objection to a child's extracurricular activity known in writing, after which the extracurricular activity shall no longer be deemed to be "agreed upon."

On February 5, 2015, the parties entered into an "Agreed Order Modifying and Clarifying the Parties' Custody Agreement." This agreement discussed custody and visitation issues, not child support issues.

On June 30, 2015, father filed a petition for modification of child support in the Fairfax County Juvenile and Domestic Relations District Court (the JDR court). Father argued that the parties' incomes and child care costs had changed. On December 9, 2015, the JDR court entered an order granting father's petition. The JDR court used a shared custody calculation and ordered father to pay $800 per month, beginning October 1, 2015. The JDR court based its calculations on mother's gross income at $5,408, father's gross income at $4,973, child care costs at $698, and health insurance costs at $134. The JDR court determined that father had the children for 110 days per year. Father timely appealed the JDR court's decision.

On June 10, 2016, prior to the trial, father filed a seventeen-page pre-trial brief with several exhibits. The pre-trial brief included numerous issues for the court to consider while calculating child support, as well as father's requested relief.

- 3 -

The parties appeared before the circuit court on June 16, 2016. Father told the circuit court that since 2012 he has worked as an independent contractor doing film and television production for Passing Lane Films, LLC. The company is owned by father's current wife. From 2013 until October 2015, father was president and director of Passing Lane Films, but as of October 2015, his title was "producer." Father presented his 2015 tax return and 1099s, which reflected his income, self-employment taxes, and business expenses. According to his 1099, father earned $42,000 from Passing Lane Films in 2015 and continued to earn $3,500 per month in 2016. His self-employment tax in 2015 was $2,205, or $184 per month. He also presented evidence that his reasonable business expenses amounted to $117 per month.

Furthermore, father testified that in 2015 he did additional work for another company. However, he was no longer working with that company because it merged with another company and no longer needed video services.

On cross-examination, father testified that in 2014 he earned $40,000 from Passing Lane Films, and in 2013 he earned $48,500 from Passing Lane Films. He admitted that according to the July 12, 2012 agreements, he earned $5,250 per month. He also informed the court that the owner of Passing Lane Films, his current wife, determines his income.

Mother is employed as a membership and marketing manager for the National Court Reporters Association, and her salary in 2016 was $66,837. In 2015, she did some independent contractor work in addition to her full-time job. She testified that she obtained a second job in order "to pay down legal fees," but she would not be working as an independent contractor in 2016.

The parties also presented evidence regarding the children's after school and summer activities. Both parties agreed that the child care costs have changed since the final decree of divorce. However, they disagreed about the current cost of work-related child care. They also

presented calendars and testimony to inform the court about the number of days they visited with the children.

At the conclusion of all of the evidence, father explained to the circuit court that he wanted to remove work-related child care costs from the child support calculation. He suggested that he pay his share directly to the child care program. He asked the circuit court to "calculate the presumptive amount of the child support award."

Mother argued that the circuit court should average father's income for the past four years because his income has fluctuated. She stated, "It is important to look at more than one year for Mr. Tidwell because he owns his own business and with this [sic] wife, and their incomes vary, unlike Ms. Late who is a salaried employee."

After both parties presented their closing arguments, the following colloquy occurred between the circuit court and father:

> THE COURT: Thank you. Sir, on your work sheet you have her income at $6,669 per month. And yours at $3,895 per month. Did you prepare any additional work sheet such that might be used by the court if the court worked off of her income of $66,837?
>
> MR. TIDWELL: Yes, I did, Your Honor.
>
> THE COURT: Would you give her a copy.
>
> MR. TIDWELL: It's also a part of my pretrial brief.
>
> THE COURT: I didn't read the pretrial brief, and the reason I didn't do that is that is then you presenting evidence to me outside of court without her having the opportunity to object to it. So I did not read that brief.

Thereafter, the circuit court held that father proved that there was a material change in circumstances that warranted a modification of child support. It found that the child care costs had changed, and the JDR court did not deduct from father's gross income one-half of his self-employment taxes and reasonable business expenses. Mother stipulated that father had the children for 110 days per year, although she expected father to visit the children 107.5 days in

- 5 -

2016. Father expected to visit the children 116 days in 2016. The circuit court used 110 days in its calculation. Consequently, the circuit court used a shared custody calculation and ordered father to pay $662 per month, beginning July 1, 2016. The circuit court based its calculations on mother's gross income at $5,570, father's gross income at $4,314 less $301 for self-employment tax, child care costs at $849, and health insurance costs at $136. The circuit court calculated father's income by averaging it for the last four years. The circuit court noted that mother was trying to prove that father's income was actually greater because it was being reported as the company's income or his wife's income. However, the circuit court held that mother did not meet her burden. The circuit court entered the final order on July 29, 2016. This appeal followed.

## ANALYSIS

"Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Rinaldi v. Dumsick, 32 Va. App. 330, 334, 528 S.E.2d 134, 136 (2000) (quoting Barnhill v. Brooks, 15 Va. App. 696, 699, 427 S.E.2d 209, 211 (1993)).

> The court's discretion is not without bounds. The General Assembly has included mandatory steps that a court must follow when exercising its discretion in calculating child support. See generally Code § 20-108.1. As a result, the court's calculation of child support obligations is a combination of mandatory steps and broad discretion.

Niblett, 65 Va. App. at 624, 779 S.E.2d at 843.

"[U]nless it appears from the record that the circuit court judge has abused his discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal." Id. (quoting Milam v. Milam, 65 Va. App. 439, 451, 778 S.E.2d 535, 541 (2015)).

*Assignments of error #1 and 2[1]*

Father argues that the circuit court erred when it averaged his gross income for the past four years in order to calculate his income for child support purposes.

The circuit court stated,

> With regards to the father's income, what I find is that the most accurate way to calculate his income as an independent contractor is to average his last four years of income, and that is $57,035 in 2013, $59,680 in 2014, $48,350 in 2015, and $42,200 [sic] in '16. That comes to an average of $4,313 as his [monthly] income.[2]

Father is self-employed and admitted that his income has fluctuated over the years. However, he contends the circuit court erred because it averaged his income for the past four years and used that amount in the child support calculations. Father asserts the circuit court should have calculated child support based on his current income. We agree.

"The starting point for a trial court in determining the monthly child support obligation of a party is the amount as computed by the schedule found in Code § 20-108.2." Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991). "The amount of child support under the child support guidelines must be based on the parents' actual gross income." Niblett, 65 Va. App. at 625, 779 S.E.2d at 843 (quoting West v. West, 53 Va. App. 125, 135, 669 S.E.2d 390, 395 (2008)).

---

[1] Considering our holding with respect to the first assignment of error, we need not address the issues raised in the second assignment of error. See Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009) ("an appellate court decides cases on the best and narrowest ground available" (internal quotations and citations omitted)).

[2] The circuit court used $42,000, not $42,200, for father's income in 2016, so father's average monthly income for 2013 through 2016 is $4,313.85. In issuing its ruling from the bench, the circuit court stated that father's average monthly income was $4,313. The child support worksheet attached to the final order states that father's monthly income is $4,314.

Code § 20-108.2(C) defines gross income as:

> [A]ll income from all sources, and shall include, but not be limited to, income from salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits except as listed below, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veterans' benefits, spousal support, rental income, gifts, prizes or awards.

Furthermore, "[g]ross income shall be subject to deduction of reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business." Id.

Code § 20-108.1 states that there is a rebuttable presumption that the guidelines from Code § 20-108.2 establish "the correct amount of child support to be awarded." "*[A]fter* determining the presumptive amount of support according to the schedule, the trial court may adjust the amount based on the factors found in Code §§ 20-107.2 and 20-108.1." Richardson, 12 Va. App. at 21, 401 S.E.2d at 896 (emphasis in original).

Code § 20-108.1 explains that in child support cases, a "court shall consider all evidence presented relevant to any issues joined in that proceeding . . . [and a] court's decision in any such proceeding shall be rendered upon the evidence relevant to each individual case." See also Niblett, 65 Va. App. at 628, 779 S.E.2d at 845.

"Code § 20-108.1(B) lists reasons a judge may elect to deviate from the presumptive guideline amount, because these factors 'affect the obligation, the ability of each party to provide child support, and the best interests of the child.'" Murphy v. Murphy, 65 Va. App. 581, 590, 779 S.E.2d 236, 240 (2015) (quoting Code § 20-108.1(B)). A trial court may decide that based on the facts of a particular case, it should deviate from the child support guidelines because a party's current gross income does not adequately represent a party's ability to provide child support. Factor 11 of Code § 20-108.1 allows a trial court to consider the "[e]arning capacity,

- 8 -

obligations, financial resources, and special needs of each parent." For cases in which a party's income fluctuates, a trial court could average a party's income over a reasonable period of time in order to ascertain a party's true earning capacity. See Patel v. Patel, 61 Va. App. 714, 727-28, 740 S.E.2d 35, 42 (2013) (court approved of using a three-year average to determine husband's income). If a trial court determines that "the application of such guidelines would be unjust or inappropriate," it must make written findings to state what the amount of child support would have been pursuant to the guidelines and then explain "why the order varies from the guidelines." Code § 20-108.1(B). The circuit court erred insofar as it did not first calculate a presumptive support amount based on current year income, and then, *after that,* explicitly analyze whether higher income in prior years manifested a greater earning capacity that rendered the presumptive award inappropriate or unjust.

We, therefore, conclude that the circuit court erred in averaging father's income, instead of using his current income, when it calculated child support pursuant to the guidelines in Code § 20-108.2. Accordingly, we reverse and remand this matter to the circuit court to calculate the presumptive amount of child support using father's current income and to determine whether the "application of such guidelines would be unjust or inappropriate." Code § 20-108.1(B).

*Assignment of error #3*

Father argues that the circuit court erred by accepting mother's representation of the costs for child care because the costs were "premised upon a document not admitted into evidence."[3]

---

[3] In response to a writ of certiorari, the circuit court indicated that mother "proffered, but did not identify into the record certain proposed, demonstrative exhibits." The circuit court stated that the contents of mother's Exhibit 4 regarding child care costs were admitted as oral testimony. On January 19, 2017, father filed a motion asking this Court to include mother's Exhibit 4 in the record. We grant father's motion to include mother's Exhibit 4 in the record for purposes of this appeal.

He further asserts that the circuit court denied him the opportunity to "effectively cross-examine" mother about the child care costs.

During the trial, mother tried to offer a "demonstrative exhibit" that showed her calculation of the costs for work-related child care. Father objected to the exhibit because mother had not provided it to him previously in discovery. The circuit court sustained the objection. It held that mother could offer the evidence orally and that father could cross-examine her. Consequently, mother testified that the costs for work-related child care, including summer camps and after-school camp for one child, were $849 per month. She further explained that the costs reflected "putting our children in camp for two weeks outside of the four weeks that I have them for vacation during the summer."

On cross-examination, father asked mother how she arrived at the $849 per month figure. She provided him with her demonstrative exhibit, which broke out the costs for after-school care and summer camps. Father then questioned mother about the summer camps and whether she believed that he should be responsible for a portion of the camps, even though it was during her vacation time with them. She responded affirmatively because she would be working and this expense was "work related child care." She explained that this proposal was "based on talking to the children and following their interests and what they would like to do this summer." Despite having the opportunity to do so, father did not question mother further about child care costs.

Code § 20-108.2(F) states, "Any child-care costs incurred on behalf of the child or children due to employment of the custodial parent shall be added to the basic child support obligation." "This language is mandatory." Prizzia v. Prizzia, 58 Va. App. 137, 171, 707 S.E.2d 461, 477 (2011).

In Prizzia, the mother testified about her child care expenses, but did not provide additional proof of those expenses. Id. This Court affirmed the trial court's decision that the

mother's testimony was insufficient because there was no evidence about alternatives and what was reasonable. Id. Furthermore, the trial court questioned the expenses when mother was paying a nanny a higher hourly rate than what she was earning. Id. at 171, 707 S.E.2d at 478. This Court concluded, "Simply because a statute requires inclusion of certain expenses in a child support award, it does not follow that the party seeking the inclusion of those expenses does not have the burden to produce sufficient credible evidence showing the appropriate amount of those expenses." Id. at 171-72, 707 S.E.2d at 478.

Likewise, in Oley v. Branch, 63 Va. App. 681, 697, 762 S.E.2d 790, 797-98 (2014), the Court affirmed the trial court's decision that Oley failed to prove that the nanny expenses were reasonable and appropriate under the circumstances. However, the trial court found that Oley's testimony was "not particular[ly] credible" and "the evidence did not demonstrate that the nanny's responsibilities had 'anything to do with work-related day care.'" Id. at 688, 762 S.E.2d at 793.

Unlike Prizzia and Oley, the circuit court in this case found mother's testimony to be credible.[4] Mother intended to place the children in the same day care and summer camps that they had attended for years. The circuit court did not conclude that her work-related child care expenses were unreasonable in light of the circumstances. Accordingly, the circuit court did not abuse its discretion in accepting mother's testimony about the child care expenses.

In addition, father argues that he did not have sufficient time to prepare and cross-examine mother about her child care expenses because he did not receive her demonstrative exhibit in advance of the trial. However, the record reflects that the circuit court

---

[4] "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citation omitted).

gave father the opportunity to cross-examine mother about her testimony. Father knew that child care expenses would be an issue in this case since he raised that issue as one of the reasons he was seeking a modification of child support. He also was aware of the costs for the after-school program and summer camps in the past.

Therefore, the circuit court did not err in using mother's figure of $849 for work-related child care expenses in its child support calculation.

*Assignment of error #4*

Father argues that the circuit court erred by refusing "to consider a cause of action in the Petition regarding the number of days . . . [mother] illegally deprived custody of the children to [father] . . . ." Father contends the circuit court should have heard evidence about how mother did not allow father to make up his visitation time with the children when he had to go out of town for business. He asserts that mother was not complying with their custody agreement, which affected the number of days he visited with the children. Father notes that the number of days he visits with the children is used in shared custody child support calculations.

Father's petition was titled "Petition for Modification of Child Support." In the petition, father requested the following relief:

> a. Determination that a material change in circumstances has occurred as to the (i) Parties financial condition, (ii) change in the law governing child support; (iii) significant reduction in child care costs; and (iv) Mother's unlawful denying of visitation to Father which results in a reduction of days Children are in the Father's custody;

> b. Order that Mother must provide Father with the information necessary to accurately calculate Child Support under the present law; or

> c. Alternatively, order that the Parties submit to the Court the information necessary to calculate Child Support under the present law;

> d. Such further relief as the Court deems just and proper.

- 12 -

Contrary to father's assertions, the petition did not raise visitation as an issue. The petition stated that mother's refusal to switch visitation days to accommodate father's work schedule led to a change in circumstances for child support purposes because father did not have the children as often as he thought he should.

At the outset of the trial, mother asserted that father was "trying to modify custody through this child support case." Throughout the hearing, the circuit court reminded the parties that custody and visitation were not before the court.

Code § 20-108.2(G)(3)(a) states

> Where a party has custody or visitation of a child or children for more than 90 days of the year, as such days are defined in subdivision G 3(c), a shared custody child support amount based on the ratio in which the parents share the custody and visitation of any child or children shall be calculated in accordance with this subdivision.

Both parties agreed that the shared custody child support calculations applied. Father presented an exhibit showing that he expected to visit with the children for 116 days in 2016. Mother presented an exhibit showing that she expected father to visit with the children for 107.5 days in 2016.

The circuit court engaged in the following colloquy with mother:

> THE COURT: On each of your work sheets, ma'am, you have the father having 110 days; on his work sheet he has the father with the child 111 days. But it's my recollection that that's inconsistent with the testimony that you both gave, actually. I thought you had him at 108 days.

> MS. LATE: Yes, Your Honor, on the demonstrative that I put together I had him at 108 days, but in juvenile court I stipulated to 110 days, because then it's 30 percent him, 70 percent me. And I'm willing to do that again, just split the difference between his number and my number.

In this child support case, the circuit court was tasked with determining the number of days that father was visiting with the children, not the number of days that father wished to visit

with the children. Contrary to father's assertions, the circuit court did not err in applying 110 days in the child support calculation. If father wished to modify visitation or enforce the parties' custody agreement, then there were alternatives available to him.

*Assignment of error #5*

The circuit court ordered that the revised child support would be effective as of July 1, 2016. Father argues that the circuit court erred by not applying the revised child support amount retroactively. He notes that his petition was served on mother on August 20, 2015, so he asserts that the new child support should have been effective on September 1, 2015.

The circuit court stated,

> I find that based upon the mother's need and father's ability to pay the uncertainty with regards to the father making a full disclosure of his income and the matters related to the issue of whether or not the corporate income is actually his income being shielded or not, I find that those issues are significant enough that it is appropriate that the support payment be changed effective today as opposed to on any other date.

Code § 20-108 states, "No support order may be retroactively modified, but *may* be modified with respect to any period during which there is a pending petition for modification in any court, but only from the date that notice of such petition has been given to the responding party." (Emphasis added.) "[W]hether to make modification of a support order effective during a period when a petition is pending is entirely within the discretion of the trial court." O'Brien v. Rose, 14 Va. App. 960, 965, 420 S.E.2d 246, 249 (1992); see also Stiles v. Stiles, 48 Va. App. 449, 456, 632 S.E.2d 607, 611 (2006).

Since the amount of father's income was one of the main issues in this case, the circuit court did not abuse its discretion in deciding to make the child support payments effective as of the date of the hearing, when it resolved that main issue.

- 14 -

*Assignment of error #6*

On June 10, 2016, prior to the trial, father filed a seventeen-page pre-trial brief, plus numerous exhibits.[5] After the parties presented their evidence and closing arguments, the circuit court told father, "I didn't read the pretrial brief, and the reason I didn't do that is that is then you [are] presenting evidence to me outside of court without her having the opportunity to object to it. So I did not read that brief."

Father argues that the circuit court "erred in refusing to read or consider the *pro se* Appellant's Pre-trial Brief, and by giving erroneous reasons at trial for not doing so, thus improperly ignoring *pro se* Appellant's pleadings and legal arguments and depriving him of due process."

First, we note that the circuit court never indicated that it ignored father's pleadings. The circuit court stated that it did not read father's pre-trial brief, which is different than his pleadings. Therefore, we will not consider that portion of appellant's arguments.

With respect to the remainder of father's arguments, the Virginia Constitution states that "no person shall be deprived of his life, liberty, or property without due process of law . . . ." Va. Const. art. I, § 11.

"All the authorities agree that 'due process of law' requires that a person shall have reasonable notice and a reasonable opportunity to be heard before an impartial tribunal, before any binding decree can be passed affecting his right to liberty or property." Menninger v. Menninger, 64 Va. App. 616, 621, 770 S.E.2d 232, 235 (2015) (quoting Ward Lumber Co. v. Henderson-White Mfg. Co., 107 Va. 626, 630, 59 S.E. 476, 478 (1907)).

"A day in court, an opportunity to be heard, is an integral part of due process of law." Id. (quoting Venable v. Venable, 2 Va. App. 178, 181, 342 S.E.2d 646, 648 (1986)).

---

[5] The circuit court did not request that the parties file pre-trial briefs.

We note that father did not cite any legal authority, nor could we find any, supporting his argument that a Virginia trial court is required to read a pre-trial brief prior to the hearing on the matter. Even if we were to assume that the trial court was required to read the pre-trial brief, which we are not saying was a requirement, father was not prejudiced by the fact that the trial court did not read his pre-trial brief.

The circuit court did not read the pre-trial brief, but it did listen to all the evidence and argument presented by the parties. Father had the opportunity to be heard at the trial. Father presented the same evidence and made the same arguments found in his pre-trial brief during the trial. In his pre-trial brief, father argued that there have been "significant changes in circumstances." For example, in his pre-trial brief, father stated that the number of days he visited with the children changed; however, he referred to the *pendente lite* child support calculation, not the last child support order. His pre-trial brief also addressed his allegations that mother withheld visitation. During the trial, father tried to raise the visitation issue, but the circuit court told father that visitation was not before the court because it was not an issue in the original pleading. Yet, father was able to present calendars and testify at trial about the number of days he visited with the children. In addition, father argued that the children's child care costs changed because the oldest child no longer went to before or after school care. Both parties agreed to this change at trial, and it was stated in the final order. Furthermore, the pre-trial brief included father's calculation of child support. Father argued many of the same points regarding child support at trial, but the pre-trial brief included a section stating that "interest, dividends, and/or capital gains" should be added to the parties' income. Neither party brought up this issue during the trial, and both agreed to use employment income for child support purposes. Therefore, father waived this argument during the trial. Father also argued in his pre-trial brief that he was not under-employed and, as he did at trial, explained his position at Passing Lane

Films and the loss of one of his clients. During the trial, father offered into evidence the same affidavit regarding Passing Lane Films that was attached to his pre-trial brief. Lastly, father asserted in his pre-trial brief that the support should be retroactive to August 20, 2015, when mother was served. He also argued this point during the trial. The only significant change between father's pre-trial brief and his evidence and closing argument was the calculation of the parties' income. As noted above, father abandoned his argument during the trial because there was no evidence about the parties' income from interest, dividends, and capital gains.

Therefore, the circuit court did not violate father's due process rights even though it did not read his pre-trial brief.

CONCLUSION

For the reasons discussed above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.