UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Petty, AtLee and Senior Judge Clements


SHERI REDDICK

MEMORANDUM OPINION*

v.     Record No. 1321-17-1

PER CURIAM
FEBRUARY 13, 2018

VIRGINIA BEACH DEPARTMENT OF
 HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

(Debraca C. Arrington, on brief), for appellant.

(Mark D. Stiles, City Attorney; Christopher S. Boynton, Deputy City
Attorney; Elena E. Ilardi, Associate City Attorney; Theresa B. Berry,
Guardian *ad litem* for the minor children, on brief), for appellee.


Sheri Reddick (mother) appeals the order terminating her parental rights to her two youngest

children. Mother argues that the circuit court erred by (1) "failing to consider [her] 14th

Amendment right to due process;" and (2) terminating her parental rights pursuant to Code

§ 16.1-283(C)(2). Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See

Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother is the biological mother to four children.[1]  In 2012, mother married Brian Goffigan, who is the biological father to four other children.  In July 2014, the Virginia Beach Child Protective Services (CPS) received a referral that there was a "tremendous amount of sexual activity" among the eight children.  The referral indicated that mother and Goffigan were aware of the sexual activity among the children for a period of a year or more and continued to allow the children to be unsupervised with one another.  CPS obtained child protective orders for the eight children.  CPS sought polygraphs and psychosexual evaluations for the older children and parenting capacity evaluations for mother and Goffigan.

CPS also ordered that mother's children not have contact with Goffigan because he was a violent felon.  Immediately prior to CPS's involvement, the SWAT team arrested Goffigan for selling crack cocaine out of the house.  Mother's two youngest children were in the house when Goffigan was arrested.

On September 8, 2014, the Virginia Beach Juvenile and Domestic Relations District Court (the JDR court) entered an adjudicatory order finding that the two youngest children were at risk of being abused or neglected.  Based on mother's promises to follow a safety plan, her two youngest children were returned to her custody.[2]

The older children participated in polygraphs and psychosexual evaluations, which revealed that numerous sexual acts, including incestuous acts, occurred in mother's home for years prior to CPS's involvement.  Mother's two oldest children were the primary perpetrators.  Residential treatment was recommended for mother's two oldest children.

---

[1] Mother's two youngest children, born in January 2006 and January 2007, are the subject of this appeal.

[2] Mother's oldest child lived with one of mother's friends, and mother's second oldest child was at the Lynnhaven Boys Home.

On January 16, 2015, the Virginia Beach Department of Human Services (the Department) removed the two youngest children from mother's custody because mother had stopped following the safety plan. The Department placed the two youngest children in separate foster homes.

The Department provided numerous services to the family. Mother completed a parenting capacity evaluation. The Department referred mother to individual therapy, case management services, substance abuse counseling, substance abuse testing, trauma group therapy, women's empowerment group, and a domestic violence class. The two youngest children received trauma-focused therapy and individual therapy. Mother and the two youngest children also participated in family therapy.

One of the youngest children said that he repeatedly told his mother that he was being sexually abused by the second oldest child. He said that mother would hit the older child, but the abuse continued. Mother told the counselors that she did not know about the abuse. At the circuit court hearing, mother admitted that she never read the children's polygraphs or psychosexual evaluations.

The two youngest children stopped wanting to visit with mother. They would not participate in therapy when she was present. Each of the children indicated that they wished to live permanently with his/her respective foster family.

A sex offender treatment provider recommended that none of the children live together due to the trauma and sexual abuse that they experienced. The provider also recommended that mother's second oldest child not have any contact with the other three children.

On March 27, 2017, mother's oldest child turned eighteen years old. The Department had arranged for the child to go to an independent living program. However, on the child's

birthday, mother picked up the child and took the child to a godmother's house. The child left that home within a month and moved in with the maternal grandmother.

At the time of the circuit court hearing, the second oldest child lived with mother, and the oldest child still lived with the maternal grandmother. Therefore, mother's two youngest children could not live with mother or the maternal grandmother. Mother had no plan to offer for the children's placement.

After hearing all of the evidence and argument, the circuit court terminated mother's parental rights to the two youngest children pursuant to Code § 16.1-283(C)(2) and approved the goal of adoption. The circuit court entered its final order on July 18, 2017. This appeal followed.

ANALYSIS

*Assignment of error #1*

Mother argues that the circuit court violated her due process rights when it terminated her parental rights to her two youngest children. She contends there is a "fundamental constitutional right endowed and protected by the 14th Amendment to the United States Constitution" to parent one's child. She asserts that she is "willing and able . . . to remedy substantially the conditions which led to or required continuation of the Children's foster care placement."

Mother endorsed the final order as "seen and objected to." A statement of "seen and objected to" is insufficient to preserve an issue for appeal. Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991) (*en banc*). However, in a bench trial, an appellant can preserve her issues for appeal in a motion to strike, in closing argument, in a motion to set aside the verdict, or in a motion to reconsider. Id. Mother did not raise her due process argument with the circuit court.

- 4 -

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. We "will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). "The purpose of Rule 5A:18 is to allow the trial court to correct in the trial court any error that is called to its attention." Lee, 12 Va. App. at 514, 404 S.E.2d at 737.

Mother asks this Court to consider her argument based on the good cause exception. Mother and her attorney were present throughout the two-day trial in the circuit court. Mother had the opportunity to object, but failed to do so; therefore, the good cause exception does not apply. See M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (*en banc*) (holding that Rule 5A:18 applied because the party failed, "without good cause," to object to the evidence).

Mother also asks this Court to consider her argument based on the ends of justice exception. "The ends of justice exception is narrow and is to be used sparingly . . . ." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 10 (1989)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." Id. (emphasis in original) (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)).

"All the authorities agree that 'due process of law' requires that a person shall have reasonable notice and a reasonable opportunity to be heard before an impartial tribunal, before any binding decree can be passed affecting his right to liberty or property." Tidwell v. Late, 67 Va. App. 668, 687, 799 S.E.2d 696, 705 (2017) (quoting Menninger v. Menninger, 64 Va. App.

616, 621, 770 S.E.2d 232, 235 (2015)).  "A day in court, an opportunity to be heard, is an integral part of due process of law."  Id. (quoting Menninger, 64 Va. App. at 621, 770 S.E.2d at 235).

As noted above, mother and her attorney were present throughout the two-day trial. Mother had the opportunity to cross-examine witnesses, present evidence, and offer argument. There was no miscarriage of justice in this case, and the ends of justice exception does not apply. Therefore, we will not consider the first assignment of error.

*Assignment of error #2*

Mother argues that the circuit court erred in terminating her parental rights to her two youngest children pursuant to Code § 16.1-283(C)(2).

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted).  When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests."  Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Although mother participated in the services recommended by the Department and was willing to remedy the situation, mother was unable to remedy the situation that led to the children

being placed, and remaining, in foster care. She admitted that she had not read the polygraphs or psychosexual evaluations, which explained the trauma experienced by the children. Mother had custody of the second oldest child, who was one of the perpetrators of the abuse. The counselors recommended that the children not live together and that the two youngest children not have contact with the second oldest child. Since the second oldest child lived with mother, she had no alternative plans for placement for the two youngest children.

At the time of the circuit court hearing, the two youngest children had been in foster care for approximately thirty months. Mother was not in a position to have the children live with her. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Accordingly, the circuit court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.