COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Huff and O'Brien
Argued by videoconference

MARK ARICK ROY

MEMORANDUM OPINION* BY
v.        Record No. 0070-20-4        JUDGE MARY GRACE O'BRIEN
OCTOBER 27, 2020

KIMBERLY ELIZABETH HYNES ROY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

(Mark Arick Roy, *pro se*; Samuel A. Leven; Roy J. Baldwin; The
Baldwin Law Firm, on brief), for appellant.  Appellant submitting on
brief.[1]

Kristen L. Kugel (Cooper Ginsberg Gray, PLLC, on brief), for
appellee.

Kimberly Elizabeth Hynes Roy ("wife") was granted a divorce from Mark Arick Roy

("husband") after a trial which addressed issues of equitable distribution, child support, and spousal

support.  Husband assigns several errors to the court's rulings on equitable distribution and child

support.

First, he contends the court erred by including the full cost of a nanny in its calculation of

child support guidelines because "the children are in school for more than half the time the nanny

works, [the nanny] provides other household services to [wife] that do not qualify as child care

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant filed his opening brief by counsel Samuel A. Leven and Roy J. Baldwin of The
Baldwin Law Firm, LLC.  However, on June 5, 2020, this Court granted counsel's motion for leave
to withdraw as counsel of record.

under [Code] § 20-108.2(F), and her [salary] far exceeds 'the amount required to provide quality care from a licensed source.'"

Second, husband argues the court erred by awarding him "only 25% of the marital portion of [wife's] bonuses" because it based the decision on erroneous factual findings.

Third, husband contends the court compounded the first two errors by denying his motion to reconsider.

Fourth, husband argues the court erred by finding insufficient evidence that a September 2018 payment to wife was a bonus subject to equitable distribution and by "fail[ing] to consider additional evidence of the same."

Fifth, husband argues the court erred by failing to consider evidence proffered post-trial that a March 2018 deposit to wife's bank account was "a marital bonus subject to equitable distribution."

Finally, husband argues the court erred "when it failed to consider additional evidence and reconsider its determination of the value of the marital residence" because wife "claimed in discovery that the marital residence had a different value than she claimed at trial."

BACKGROUND

The parties married in 2000 and separated in 2018. They had three children, who were ages thirteen, eleven, and nine at the time of the final hearing in October 2019. A previous court order granted the parties joint legal custody, with wife having primary physical custody. Wife and the children reside in the parties' former marital residence in northern Virginia, and husband lives in the parties' Virginia Beach home.

A. Child-Care Expenses

Wife is the chief executive officer of a large construction firm, HITT Contracting, Inc. ("HITT") and works from 7:30 a.m. until 4:45 p.m. Historically, the parties have employed a nanny

for child care. The current nanny has been with the family for seven years; another nanny worked for them for four years. The nanny is at wife's residence from 7:00 a.m. until 5:30 p.m. She cares for the children before and after school for a total of five hours: two hours before the younger children board the school bus at 9:00 a.m. and three hours after the oldest child returns home at 2:30 p.m. Wife testified that she pays $665 per week for child care, giving the nanny a $640 check plus $25 cash for gas and other expenses. Occasionally, the nanny runs additional errands unrelated to caring for the children, and wife pays her extra money. Wife also pays the nanny's weekly salary when the children are at summer camp. At trial, wife introduced bank statements from her checking account corroborating her child-care payments.

When asked on cross-examination about the possibility of the children attending the county's school age child-care program ("SACC") as an alternative to employing the nanny, wife explained that she understood SACC had a long waitlist and was unavailable for middle-school students. Husband did not cross-examine wife further or present evidence of other child-care options.

The court ordered husband to pay "guideline child support" of $1,575 per month. The court's calculation of the guidelines included the full $665 per week paid to the nanny as child-care costs pursuant to Code § 20-108.2(F). The court ruled that the nanny's salary would only be included in the guideline calculation until the youngest child turned thirteen.

### B. Wife's Bonuses

Both parties testified about their employment history in the construction industry. Wife has spent her entire career with HITT. Husband has also worked for HITT; however, he left for a competing firm for several years before returning in early 2016 as a vice president in HITT's business unit. Wife worked in a different department.

In summer 2017, wife was promoted to CEO of HITT, effective January 2018.  At that time, husband was passed over for a promotion that was given to one of his peers.  At trial, wife testified that she was not involved in that decision.

Following wife's promotion, husband became hostile toward wife and HITT.  He "told [her] constantly that [she] was a terrible CEO" and that he "had a vote of no confidence" in her.  Husband wrote a letter resigning from HITT in early January 2018, but he rescinded his resignation shortly thereafter.

In March 2018, husband officially resigned in a letter addressed to wife, with copies to other corporate executives.  The letter stated,

> I submit this letter as resignation of my position as Vice President at HITT Contracting effective April 11, 2018.  I appreciate the employment opportunity the company has provided me, along with the many challenges presented along the way.  After careful consideration, *the company's leadership and culture do not align with my moral standards* and personal development goals.  It is not without consternation[] that I have arrived at the decision to pursue other opportunities.  I wish the company success in the future.

(Emphasis added).  At trial, husband testified that he knew wife would be "worried about her career" as a result of the letter and that she asked him not to send it.

During this time, husband also repeatedly accused wife of having an affair with the owner of HITT, as well as the man who was promoted instead of him.  Husband telephoned the owner's wife to relay his suspicions.  At trial, husband testified that he called the owner's wife to have "a conversation about infidelity" and suggested she "ask [her] husband" about meetings with wife in a private conference room.  Wife denied any infidelity.  The parties separated in July 2018.

At trial, wife testified concerning her compensation and bonuses.  The bonuses, determined in February of each year, were based on profits from the preceding year, performance evaluations,

and client reviews. The bonuses are typically paid in two installments six months apart. To receive a bonus payment, an employee must remain employed by HITT through the date of disbursement.

The court found that two bonuses received in 2019 were marital property, and it determined the marital portion. After analyzing the factors affecting equitable distribution in Code § 20-107.3, the court ruled that wife was entitled to 75% of the marital share of her 2019 bonuses and husband was entitled to the remaining 25%. Noting that payment of the bonuses was dependent on wife remaining employed by HITT, the court found that husband's behavior was an attempt to adversely affect her employment and, consequently, her bonuses. The court found husband's resignation letter, stating that the "company's leadership and culture do not align with my moral standards," constituted an "attack on [wife]." The court also relied on husband's phone call to the wife of HITT's owner, which "clearly implied that [wife was] having an affair" with the owner, an allegation the court found no credible evidence to support.

The court also considered the fact that wife's bonuses were dependent on HITT's current profitability and client satisfaction. Because these two factors "look up to the present time" and thus contemplate post-separation circumstances, the court determined it would not be "appropriate to divide the bonus[es] equally."

During closing argument, husband presented a new claim for equitable distribution of a September 2018 deposit into wife's bank account, which he argued was a bonus. He referred the court to wife's bank statements that had been admitted into evidence. One statement reflected a deposit from HITT of $133,965.67 on September 7, 2018. Husband represented that he discovered this deposit during a recess in response to the court's request for additional information pertaining to

disputed mortgage payments.[2]  Husband conceded that the September 2018 deposit had not been addressed during trial.  He acknowledged that although he had questioned wife about her bonuses when the bank statements were admitted, he did not cross-examine her about this deposit or present any evidence concerning it.

The court declined to consider additional evidence or argument to support husband's new equitable distribution claim, noting that "we've had extensive discussion in the last two days on this very issue[,] and this is the very first time [the court is] hearing about this."  The court further stated that it "gave both parties the opportunity to put on such evidence as they wish[ed,] and so the evidence is closed."  The court characterized as "speculative" husband's argument that the September 2018 bank statement reflected a bonus to wife and declined to classify the deposit as marital property.

### C.  Marital Residence

The parties presented competing evidence of the value of the marital residence.  They purchased the home approximately twelve years before trial, and wife had lived there since they bought it.  Husband moved to Virginia Beach in May 2018 and has not returned to the marital residence since July 2018.

To establish the value of the marital residence, husband relied upon a 2014 appraisal showing the home was worth $1,437,000.  Wife testified that the house needed significant repairs and introduced a 2019 tax assessment that reflected a value of $1,243,910.

---

[2] Husband also tried to match the September 2018 deposit with a check produced by HITT. However, after the parties determined that the check was from 2014, husband agreed that piece of evidence was not relevant to the case.

During closing argument, husband attempted to introduce wife's answer to an interrogatory concerning the value of the marital residence. However, because the interrogatory answer was not addressed in testimony or introduced into evidence during the trial, the court declined to consider it.

The court noted that the 2019 tax assessment was more recent than the 2014 appraisal and concluded that the assessment provided the more accurate determination of the value of the marital residence. It valued the residence accordingly and ordered an equal division of the equity in the home.

The court granted the divorce based on one-year separation, awarded husband spousal support in the amount of $4,000 per month for three years, and provided for the division of personal property.

### D. Motion to Reconsider

Husband subsequently filed a motion to reconsider the court's valuation of the marital residence and denial of his request to introduce wife's interrogatory answer in his closing argument. He also asked the court to reconsider its decision to include the nanny's entire salary as a child-care cost under Code § 20-108.2(F). Additionally, he requested that the court reconsider its ruling regarding the September 2018 deposit and consider additional evidence supporting his contention that it was a bonus. Specifically, husband presented a HITT pay statement from September 7, 2018, purportedly showing a "bonus" payment of $133,965.67 to wife. The pay statement had never been introduced at trial.

Finally, in the motion to reconsider, husband raised a new claim seeking equitable distribution of a March 8, 2018 deposit into wife's bank account. He had not presented any evidence during trial to support this claim.

The court denied the motion to reconsider in its entirety without a hearing.

ANALYSIS

A. Computation of Child Support

"Decisions concerning child support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Tidwell v. Late, 67 Va. App. 668, 678 (2017) (quoting Rinaldi v. Dumsick, 32 Va. App. 330, 334 (2000)). "Child support decisions . . . 'typically involve fact-specific decisions best left in the "sound discretion" of the trial court.'" Niblett v. Niblett, 65 Va. App. 616, 624 (2015) (quoting Brandau v. Brandau, 52 Va. App. 632, 641 (2008)).

"The court's discretion, however, is not without bounds." Id. When determining child support, a court is first required to follow mandatory steps, including calculating work-related child-care costs, to establish a presumptive amount of support. See Code § 20-108.1; Code § 20-108.2(B), (F). "[U]nless it appears from the record that the circuit court judge has abused his discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal." Niblett, 65 Va. App. at 624 (alteration in original) (quoting Milam v. Milam, 65 Va. App. 439, 451 (2015)).

Husband argues that the court abused its discretion by including the nanny's full salary as a work-related child-care cost in its calculation of the child support guidelines. He asserts that wife failed to prove both that the nanny's weekly salary was "reasonable" and that the nanny was engaged in work-related child care as required by Code § 20-108.2(F).[3]

---

[3] Husband further argues that "*wife* erroneously sought to shift the burden" to him to prove that the costs were unreasonable and not for work-related child care. (Emphasis added). Because we review burden-shifting actions by a court, rather than by an opposing litigant, we decline to address this argument. See, e.g., Richardson v. Richardson, 30 Va. App. 341, 350 (1999) (reviewing trial court's role in shifting the burden of proof from the moving to non-moving party in the context of child support obligations).

Code § 20-108.2(F) provides that when calculating child support, "[a]ny child-care costs incurred on behalf of the child or children due to employment of the custodial parent shall be added to the basic child support obligation. Child-care costs shall not exceed the amount required to provide quality care from a licensed source." A custodial parent must produce sufficient credible evidence showing that the claimed child-care cost is reasonable and for work-related child care. See Tidwell, 67 Va. App. at 683 (holding that mother's testimony was credible and sufficient to prove that her child-care expenses were reasonable and work-related); cf. Prizzia v. Prizzia, 58 Va. App. 137, 171-72 (2011) (affirming exclusion of day care expenses from child support calculation where custodial parent failed to produce any credible evidence as to the reasonableness of the claimed costs). The reasonableness inquiry examines whether the claimed costs are "appropriate under the circumstances." Oley v. Branch, 63 Va. App. 681, 697 (2014).

Husband argues that wife failed to prove the nanny's salary was reasonable because wife provided no evidence that she considered other options or that the decision to have the nanny provide child care was in the children's best interests. However, wife did testify about the infeasibility of other child-care arrangements: she explained that SACC was not an option because she understood that it had a long waitlist and was not available for middle-school students, such as her son.

Additionally, the parties had employed a nanny for eleven years, since their oldest child was two, and this particular nanny had worked for the family for seven years. From these facts, the court was free to conclude that the parties' child-care needs were best served by continuing to employ the nanny. See Tidwell, 67 Va. App. at 683 (affirming award based on mother's testimony concerning costs to "place the children in the same day care and summer camps that they had attended for years").

Husband also asserts that because the children are in school for more than half of the nanny's workday, the court abused its discretion in determining that the nanny's full salary was for child care. He relies on Oley v. Branch, which affirmed the denial of child-care costs to a father who "failed to produce credible evidence that the child[-]care costs he was seeking were employment related." 63 Va. App. at 697. In Oley, the "nanny worked from 8:30 a.m. to 5:00 p.m. cooking, cleaning, and doing laundry while the children were in school 8:15 a.m. to 3:00 p.m. and [the father] was working from home." Id. The evidence showed the "nanny" was employed primarily as a housekeeper; she arrived after the children left for school, and she only provided two hours of care for them when they returned home. Id. at 688. We determined that the court "was free to conclude that [the father] failed to prove that the nanny was necessary due to his employment or that he failed to demonstrate the requested amount of day care expenses was appropriate under the circumstances." Id. at 697.

Here, by contrast, the court found that the nanny's role was to care for the children so that wife could maintain employment with HITT. The record supports this finding. Wife leaves shortly after the nanny arrives in the morning and does not return until late afternoon. The nanny supervises the children for two hours before getting them on the school bus in the morning and for three hours after school. Nothing in Code § 20-108.2(F) specifically limits child-care costs to those incurred only when the provider is in direct contact with children.[4]

Further, unlike in Prizzia, where the custodial parent failed to produce any credible evidence of reasonable day care costs, see 58 Va. App. at 171-72, here wife not only testified about the nanny's child-care responsibilities and compensation but also produced corroborating bank statements. Wife also explained that she provided the nanny with additional compensation, which

---

[4] We note that husband does not challenge the portion of the nanny's salary paid while the children are away at summer camp.

she did not include in her proffered child-care expenses, to perform errands and chores separate from her child-care duties. Given these circumstances, and the parties' historical practice of employing a nanny for their children, the court did not abuse its discretion by concluding that wife's requested child-care costs were reasonable and employment-related. See Oley, 63 Va. App. at 697. Accordingly, the court did not err in including the nanny's full salary as a child-care cost under Code § 20-108.2(F).

### B. Equitable Distribution of Bonuses

In determining equitable distribution, the court declined to divide the marital share of wife's bonuses equally because husband actively attempted to undermine wife's employment. Husband asserts that the court's decision was "based on findings not supported by the evidence" and constituted an abuse of discretion.

"On appeal, a trial court's equitable distribution award will not be overturned unless the Court finds 'an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award.'" Wiencko v. Takayama, 62 Va. App. 217, 229-30 (2013) (quoting McIlwain v. McIlwain, 52 Va. App. 644, 661 (2008)). "An abuse of discretion . . . exists if the trial court fails to consider the statutory factors required to be part of the decision[-]making process or makes factual findings that are plainly wrong or without evidence to support them." Congdon v. Congdon, 40 Va. App. 255, 262 (2003) (citation omitted).

After determining the marital portion of wife's bonuses that were disbursed in 2019, the court analyzed the equitable distribution factors in Code § 20-107.3(E) and concluded that wife was entitled to 75% of the marital portion, with husband entitled to the remaining 25%. The court ordered this division based on factual findings that husband "undermine[d] [wife's] employment" in two ways. First, husband telephoned the wife of the owner of the company and alleged that the owner and wife were having an affair. Second, he worded his resignation letter as an "attack on

[wife]," commenting that "the company's leadership and culture do not align with my moral standards." The court also based the 75/25 division on the fact that wife's bonuses are dependent on HITT's profitability and client satisfaction, two factors which considered post-separation circumstances.

On appeal, this Court "view[s] the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Tidwell, 67 Va. App. at 673 (quoting Niblett, 65 Va. App. at 622). Husband's own testimony about the phone call supports the court's findings that he sought to endanger wife's employment. Husband acknowledged that he called the owner's wife and discussed private meetings between their spouses and his suspicions of infidelity. From this evidence, the court could reasonably infer that husband's call implied that wife was having an affair with the owner, and it could have endangered her employment.

The evidence also supports the court's finding that husband's resignation letter and its commentary on morality constituted an attack on wife's character designed for the company's leadership to see. Because wife would only receive her bonuses if she was employed at the time of disbursement, the court could reasonably infer that by disparaging wife, husband was endangering her bonus payments. The court was free to consider husband's conduct when making the equitable distribution determination. See Code § 20-107.3(E)(5) (authorizing consideration of the circumstances "contribut[ing] to the dissolution of the marriage"); Code § 20-107.3(E)(11) (authorizing consideration of "[s]uch other factors as the court deems necessary or appropriate . . . in order to arrive at a fair and equitable monetary award").

The record also supports the court's other reason for the 75/25 division. Wife testified that when HITT awards bonuses, it considers client satisfaction and performance reviews. She testified that these factors are evaluated up until the time of bonus disbursement, which, as the court noted, may be reviewed "up to the present time." See Code § 20-107.3(E)(6) (authorizing consideration of

- 12 -

the timing and manner in which marital property is acquired when determining equitable distribution); Matthews v. Matthews, 26 Va. App. 638, 649-50 (1998) (awarding husband a majority of assets acquired with marital funds after separation, based on evidence of his post-separation efforts as a company CEO). Thus, the court did not err by considering post-separation circumstances affecting wife's bonuses in exercising its discretion to award husband 25% of the marital portion. Because the court's factual findings are supported by the evidence and not plainly wrong, we affirm the equitable distribution decision. See Congdon, 40 Va. App. at 262.

### C. Motion to Reconsider

Husband argues that not only did the court err by denying his motion to reconsider the child-care costs and the division of the marital portion of the bonuses, but also it erred by failing to consider supplementary evidence supporting his claim for equitable distribution of additional bonuses paid to wife. Husband also argues that the court erred in failing to reconsider its valuation of the marital home, based on additional evidence.

An appellate court reviews the denial of a motion to reconsider for an abuse of discretion. Winston v. Commonwealth, 268 Va. 564, 620 (2004). Likewise, "[t]he granting or denying of a motion to hear additional evidence is within the sound discretion of the trial court." Rowe v. Rowe, 24 Va. App. 123, 144 (1997). See Morris v. Morris, 3 Va. App. 303, 307 (1986) (affirming refusal of a wife's request to reopen proceedings to hear additional evidence concerning an asset she asserted should not have been classified as marital property).

We do not find the court abused its discretion in refusing to reconsider its child support determination or division of the marital share of wife's bonuses. The court heard extensive evidence on these issues during the multi-day trial. The record supports the court's decision to include the nanny's full salary in its calculation of child support guidelines. The record also supports the court awarding husband only 25% of the marital portion of wife's bonuses.

- 13 -

Additionally, regarding bonus payments subject to equitable distribution, the only evidence presented concerned disbursements made in 2019. The court found that husband's claim that a September 2018 deposit was a bonus — presented for the first time during closing arguments — was speculative. Because the record supports these findings, the court did not err by denying the motion to reconsider.

Husband asks us to find that the court erred by not accepting additional evidence, which was not introduced at trial, in his motion for reconsideration. In his motion, he requested that the court consider supplementary evidence regarding his claim to the September 2018 deposit, as well as new evidence supporting an additional claim, never raised during trial or argument, for a March 2018 deposit. He also requested that the court consider additional evidence not presented during trial concerning the value of the marital residence.

"After a court has concluded an evidentiary hearing 'during which each party had ample opportunity to present evidence, it [is] within the court's discretion to refuse to take further evidence on this subject.'" Holmes v. Holmes, 7 Va. App. 472, 480 (1988) (alteration in original) (quoting Morris, 3 Va. App. at 307). "In order to demonstrate an entitlement to a rehearing, a petitioner must show either an 'error on the face of the record, or . . . some legal excuse for his failure to present his full defense at or before the time of entry of the decree.'" Id. (quoting Downing v. Huston, Darbee Co., 149 Va. 1, 9 (1927)).

Husband presented no legitimate explanation for his failure to introduce evidence of the deposits he now claims were bonuses or to question wife about them. Likewise, he presented no justification for his failure to cross-examine wife about her interrogatory answer concerning the value of the residence, or to introduce the interrogatory answer into evidence. He merely relies on "the voluminous amount of documentation and evidence present in the case" as justification for

asserting that the court abused its discretion in failing to allow him to present additional evidence and failing to grant his motion to reconsider.

"Without valid excuse[,] no party who has had his day in court can reopen the hearing after final decision . . . on the mere ground that he wishes to interpose other defenses which he neglected to interpose before such decision was made." Gills v. Gills, 126 Va. 526, 546 (1920). Here, husband cannot show an "error on the face of the record" or "legal excuse for his failure to present his full [claim or] defense." Holmes, 7 Va. App. at 480 (quoting Downing, 149 Va. at 9). He never questioned wife about either the documents or the interrogatory answer. He apparently failed to examine documents provided in discovery months before the trial. These inactions do not constitute a "legal excuse." See id.

For these reasons, the court's refusal to consider the additional evidence or to grant the motion for reconsideration was not an abuse of discretion, and we find no error in the court's ruling.

### D. Attorneys' Fees

Each party requested an award of attorney's fees on appeal. "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018). See Rule 5A:30(b); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). On consideration of the record before us, we deny both parties' requests for appellate attorneys' fees.

### CONCLUSION

We hold that the court did not err in determining child support, equitably dividing the parties' marital property, including valuation of the marital residence, and denying the motion to reconsider. Accordingly, we affirm the ruling in its entirety, and we deny both parties' requests for appellate attorneys' fees.

Affirmed.

- 15 -